UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAPS KAPENDE, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. 18-1238 (ABJ) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Catholic Charities submitted Freedom of Information Act ("FOIA") requests to the Department of Homeland Security ("DHS") seeking documents concerning asylum applications submitted by plaintiffs Kaps Kapende and Annie Kaseka. Plaintiffs demand that the agency release, in full, a three-page "Assessment to Refer" memorandum concerning plaintiff Kapende and a four-page "Assessment to Grant Asylum" memorandum concerning plaintiff Kaseka, which the agency is partially withholding pursuant to FOIA Exemption 5. Plaintiffs' suit not only seeks the release of those documents, but also an order "enjoin[ing] defendant from failing to disclose entire Assessments in the future." Compl. [Dkt. # 1] at 19. Pending before the Court are the parties' motions for summary judgment. For the reasons that follow, the Court will deny plaintiffs' motion and grant defendant's motion.

**BACKGROUND**

The following facts are not in dispute. Plaintiff Kapende was born in the Democratic Republic of the Congo. Compl. ¶ 93. After arriving to the United States he applied for asylum and was interviewed by an asylum officer at the Arlington, Virginia Asylum Office. *Id*. That

asylum officer drafted a document known as an "Assessment to Refer," which generally contains "facts, reasons, citations to authorit[ies], and conclusions" for denying an asylum application. *Id.* ¶¶ 34–35. This document is not given to the applicant. *Id.* ¶ 36. When an asylum officer denies an application, the case is then referred to an immigration judge for adjudication in removal proceedings. *See* 8 C.F.R. § 208.14(c)(1).

Plaintiff Kaseka was also born in the Democratic Republic of the Congo. Compl. ¶ 97. After arriving to the United States she applied for asylum and was interviewed by an asylum officer who granted her asylum. *Id.* The officer drafted a document known as an "Assessment to Grant Asylum," which generally contains "facts, reasons, citations to authorit[ies], and conclusions." *Id.* ¶ 32. This document is also not given to the applicant. *Id.* ¶ 33.

On or about July 12, 2017, plaintiff Catholic Charities submitted a FOIA request to the United States Citizenship and Immigration Services ("USCIS"), a component of DHS, seeking the following records concerning plaintiff Kapende:

- the notes of the asylum officer;
- the assessment written by the asylum officer;
- any material used by the asylum officer, but not given to him by the individual named above

Ex. 8 to Compl. [Dkt. # 1-9] ("Kapende FOIA Request") at 2.[1] USCIS responded to the FOIA request on December 31, 2017, and released to plaintiff Catholic Charities 145 pages in their entirety, 26 pages in part, and withheld 12 pages in full pursuant to FOIA Exemption 5. *Id.* at 3. Catholic Charities appealed, and the agency released an additional three pages in part, and one page in full, including portions of the asylum officer's Assessment to Refer which it initially withheld in full. *Id.* at 4; Decl. of Jill A. Eggleston [Dkt. # 13-1] ("Eggleston Decl.") ¶ 5.

---

1   Both individual plaintiffs signed waivers allowing Catholic Charities to receive their asylum records. *See* Kapende FOIA Request at 2; Ex. 9 to Compl. [Dkt. # 1-10] ("Kaseka FOIA Request") at 2.

Additionally, plaintiff Catholic Charities filed a FOIA request on or about September 13, 2017, seeking the following documents concerning plaintiff Kaseka:

- a copy of the notes of the asylum officer;
- a copy of the assessment written by the Asylum Officer;
- a copy of the evidence relied upon by the Asylum Officer, not supplied by the applicant;
- a copy of everything in her file

Kaseka FOIA Request at 2. In response, the agency released to plaintiff Catholic Charities 378 pages in their entirety, 25 pages in part, and it withheld 6 pages in full pursuant to FOIA Exemption 5. *Id.* at 3; Eggleston Decl. ¶ 6. Catholic Charities administratively appealed, and the agency subsequently released an additional two pages in part, including portions of the Assessment to Grant Asylum which it initially withheld in full. Kaseka FOIA Request at 4; Eggleston Decl. ¶ 6.

Plaintiff Kapende "wants to know why the asylum officer rejected his application," because "he fears defendant [DHS] will use the document against him" at his upcoming immigration court hearing to deport him. Compl. ¶¶ 4, 8. Although plaintiff Kaseka was granted asylum, she also "wants to know what the asylum officer wrote about her." *Id.* ¶ 9. Plaintiff Catholic Charities states that these records will be useful in their advocacy efforts representing asylum seekers because it will give the organization insights into "what asylum officers are thinking[:] [w]hat is important to them; what is not important; what authorities are deemed persuasive; what authorities are worthless; what leads to the granting of asylum applications; what leads to their rejection." *Id.* ¶ 10a-2.

On August 8, 2018, plaintiffs moved for summary judgment, Pls.' Mot. for Summ. J. [Dkt. # 10] ("Pls.' Mot."), and on September 20, 2018, defendant opposed that motion and cross-moved for summary judgment, arguing that the partial withholdings of the assessments are

justified under Exemption 5's deliberative process privilege. *See generally* Def.'s Cross-Mot. for Summ. J. [Dkt. # 13] ("Def.'s Cross-Mot."). Those motions are fully briefed and ripe for decision. *See* Pls.' Reply to DHS Opp. to Pls.' Mot. [Dkt. # 14]; Pls.' Opp. to DHS Cross-Mot. for Summ. J. [Dkt. # 15] ("Pls.' Cross-Opp."); Def.'s Reply in Supp. of Cross-Mot. for Summ. J. [Dkt. # 19].

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d

1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

**FOIA Exemption 5**

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). A document may be properly withheld under Exemption 5 only if (1) its source is a government agency, and (2) it falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001). The exemption encompasses the deliberative process privilege which "covers documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government

decisions and policies are formulated." *Id.*, citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). Its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Id.* at 8–9 (citations omitted), quoting *Sears*, 421 U.S. at 151.

"The deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates." *Abtew v. DHS*, 808 F.3d 895, 898 (D.C. Cir. 2015), quoting *Senate of the Commonwealth of Puerto Rico v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987). "And a document is deliberative if it is 'a part of the agency give-and-take – of the deliberative process – by which the decision itself is made.'" *Id.* at 899, quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975).

The agency's declarant avers that the withheld information is protected by Exemption 5 because the assessments are "intra-agency, predecisional, [and] deliberative memos prepared by Asylum officers subject to approval by a [Supervisory Asylum Officer]." Eggleston Decl. ¶ 7. According to the agency, the assessments "were drafted by asylum officers in order to explain the basis for their recommendations to their [Supervisory Asylum Officer]." *Id.* ¶ 10.

The agency declaration outlines the internal deliberative processes related to each type of assessment.

> The Assessment to Refer Memo serves as a recommendation by the interviewing asylum officer for USCIS's final decision for an asylum applicant. Once the Assessment to Refer Memo is completed, it is reviewed for legal sufficiency by a [Supervisory Asylum Officer]. If the asylum officer's reasoning and recommendation is accepted by the [Supervisory Asylum Officer], the Assessment to Refer Memo is initialed by the [Supervisory Asylum Officer] and placed in the applicant's file (the "A-file"). Once completed, an agency decision, known as a Referral

> Notice, is issued by the USCIS Asylum office to the asylum applicant and to his or her counsel. The applicant's A-file is then forwarded to Immigration and Customs Enforcement ("ICE") for docketing and litigation. Upon referral to ICE, the Referral Notices are issued by the USCIS Asylum Office to asylum applicants (and/or their attorneys) subsequent to the completion of the asylum officer's Assessments to Refer and informs the applicant that he/she is being referred to an immigration judge for a final decision and explains, in narrative form, the basis for the referral.

Eggleston Decl. ¶ 8. Additionally, the agency declarant confirms that in plaintiff Kapende's particular asylum case, the Assessment to Refer Memo was "prepared by an Asylum officer in a narrative format, explained the officer's reasons for recommending that asylum be denied, discussed legal justifications for a denial determination, and included other reasons to refer the case to ICE." *Id.*

The agency describes the internal processes associated with the Assessment to Grant Asylum memo as follows:

> Once the Assessment to Grant Asylum Memo is completed, it is reviewed for legal sufficiency by a [Supervisory Asylum Officer]. If the recommendation is accepted, the memo is initialed by the [Supervisory Asylum Officer] and placed in the applicant's A-file. Once completed, an agency decision, known as an Asylum Approval memo, is issued by the USCIS Asylum office to the asylum applicant and to his or her counsel. This deliberative decision making and documenting process within the Assessment to Grant Asylum Memo is an essential part of the USCIS deliberative process that may lead to the ultimate determination to approve an alien's application for asylum, and refer the alien for next steps in the immigration process.

Eggleston Decl. ¶ 9. In plaintiff Kaseka's asylum case, the agency confirms that the "Assessment to Grant Asylum Memo was prepared by an Asylum officer in a narrative format, explained the officer's reasons for recommending that asylum be granted, discussed legal justifications for an approval determination, and included other reasons to grant the asylum application." *Id.*

Finally, the agency explains the harm that would result from disclosure of the withheld information. The agency's declarant asserts that "[p]ublic disclosure of the withheld information will lead to asylum applicants tailoring their applications and interview responses to what they believe will tip an asylum officer's decision in their favor." Eggleston Decl. ¶ 10. According to the agency, disclosure of the "asylum officer's deliberative process will hinder the Agency's ability to make determinations solely on the merits of an asylum claim." *Id.*

Based on its review of the agency's declaration and the controlling legal authorities, the Court finds that plaintiff Kapende's Assessment to Refer and plaintiff Kaseka's Assessment to Grant Asylum are protected by the deliberative process privilege under Exemption 5.

Plaintiff Kapende's Assessment to Refer is predecisional and deliberative. The Assessment to Refer is predecisional because it was drafted by the interviewing asylum officer before a decision was made; and it is also deliberative because "it was written as part of the process by which the supervisor came to [his or her] final decision." *Abtew*, 808 F.3d at 899. Here, the assessment serves as a preliminary recommendation to a supervisor and it has no "operative effect." *Id.*, quoting *Sears*, 421 U.S. at 160.

Plaintiffs insist that Kapende's Assessment to Refer is the "final decision" and that it "lost its status as a recommendation . . . after the supervisor initialed and approved the document." Pls.' Mot. at 17. The D.C. Circuit rejected that same argument in *Abtew*, another FOIA case in which a plaintiff sought a copy of his Assessment to Refer. 808 F.3d at 899. There, the Court noted that the Referral Notice, not the Assessment to Refer, represented the agency's final decision. *Id.* And since the Referral Notice did not mention the asylum officer's preliminary assessment, there was no indication that it was expressly adopted or incorporated by

8

reference in the final decision. *Id.* The Court explained that "initialing alone does not transform the Assessment into the Department's final decision." *Id.* The Court added:

> Initialing a memo may suggest approval of the memo's bottom-line recommendation, but it would be wrong and misleading to think that initialing necessarily indicates adoption or approval of all of the memo's reasoning. *See Afshar v. Dep't of State*, 702 F.2d 1125, 1143 n.22 (D.C. Cir. 1983); *see also Coastal States*, 617 F.2d at 866 (deliberative process privilege is designed "to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action").

*Id.* In this case, the agency's declarant confirms that USCIS issued a Referral Notice after the asylum officer drafted the Assessment to Refer, and that it was the Referral Notice that publicly informed plaintiff Kapende of its final decision. Eggleston Decl. ¶ 8.

Plaintiffs insist that the "facts in this case are different from the facts in *Abtew*." Pls.' Mot. at 16. They contend that "DHS has changed its procedures" and re-state paragraphs 37, 39, 40, 40a, 40g, 53, and 54 of their original complaint in support of this position. *Id.* at 17–18. It is unclear what "change" plaintiffs are referring to. The passages simply reiterate the argument that the initialed assessment is a final decision, and that the Referral Notice is created by the asylum officer using a computer that contains "boilerplate" language. Pls.' Mot. at 18. Based upon these vague and conclusory paragraphs, plaintiffs contend that they have presented "evidence" that once the Assessment to Refer was initialed, "no other human did anything." *Id.*

Plaintiffs' bare recitation of the allegations in the complaint is not "evidence." The two declarations plaintiffs attach to their motion for summary judgment fail to address the basis for their claim that "no other human did anything" after Kapende's Assessment to Refer was initialed. *See* Decl. of David L. Cleveland, Attach. A to Pls.' Mot. [Dkt. # 10-2]; Decl. of David L. Cleveland, Attach. B. to Pls.' Mot. [Dkt. # 10-3]. Plaintiffs' conclusory and unsupported

allegations are insufficient to rebut the agency's detailed declaration establishing that indeed other human actions took place. *See SafeCard Servs.*, 926 F.2d at 1200. As previously noted, the agency subsequently issued a Referral Notice informing plaintiff of its final decision, and even that did not mark the end of the process. *See* Eggleston Decl. ¶ 8. The case was then referred to an immigration judge for a final decision. *Id.*

With regards to plaintiff Kaseka's Assessment to Grant Asylum, the Court also finds that the document is predecisional and deliberative. The Assessment to Grant Asylum, like the Assessment to Refer, serves as a preliminary recommendation from the interviewing asylum officer to the supervisor. *See* Eggleston Decl. ¶ 9. Because the Assessment to Grant Asylum is drafted prior to the final decision and it is an essential tool of the agency's decision-making process, it plainly falls within the deliberative process privilege. *See Abtew*, 808 F.3d at 899. The initialed Assessment to Grant Asylum is not the final decision. The agency informs the applicant of its final decision by issuing a separate document known as an "Asylum Approval Memo." Eggleston Decl. ¶ 9. Plaintiffs have not put forth evidence that the asylum officer's preliminary assessment was expressly adopted or incorporated by reference in the Asylum Approval Memo. *See Abtew,* 808 F.3d at 899.

Next, plaintiffs argue that the agency failed to carry its burden because it did not provide justifications for how the agency would be harmed by disclosure as required by the FOIA Improvement Act of 2016, 5 U.S.C. § 552(a)(8)(A)(i). Pls.' Mot. at 18; Pls.' Cross-Opp. at 2–4. This is contrary to the record in this case. As noted, the agency provided a declaration describing the harm that would result from the release of the withheld information. *See* Eggleston Decl. ¶ 10. Plaintiffs' conclusory statement that withheld information is "benign,"

Pls.' Cross-Opp. at 4, is insufficient to rebut the good faith presumption afforded to the agency. *See SafeCard Servs.*, 926 F.2d at 1200.

The Court also rejects plaintiffs' argument that the agency issues a very similar type of document, known as a Notice of Intent to Deny ("NOID"), to another category of asylum applicants, and therefore no harm will result if plaintiff Kaseka's Assessment to Grant Asylum is released in its entirely. Pls.' Mot. at 20. The Court is unmoved by plaintiffs' argument because they cite to no authority in support of their position and they concede that the documents issued pertain to a separate category of asylum applicants. *Id.*

Based on its review of the agency's declaration and controlling decisions, the Court finds that the agency properly invoked Exemption 5 to withhold portions of plaintiffs' assessments.

**Segregability**

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

The agency released the following portions of the assessments: "the memo header (which includes pertinent identification information), general facts of the case as provided by the applicant, information about the applicant's counsel, and general administrative facts (such as when the application was filed, etc.)." Eggleston Decl. ¶ 7. The agency's declarant avers that "[a]fter carefully reviewing the [plaintiffs' assessments], I have determined that no portion of the withheld sections can be reasonably segregated and released without revealing the deliberative, decision-making nature of these intra-agency documents." *Id.* ¶ 11.

Accordingly, the Court finds that the government has met FOIA's segregability requirement.

**Injunctive Relief**

Because the Court finds that the agency properly withheld the information, it will also deny plaintiffs' request for an order enjoining the agency from "failing to disclose entire Assessments in the future." Compl. at 19.

## CONCLUSION

For the aforementioned reasons, the Court hereby denies plaintiffs' motion for summary judgment, and grants defendant's cross-motion for summary judgment. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 26, 2019